UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE CLEARY COCHRAN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL,<br>Acting Commissioner of Social Security,<br>Defendant. | Civ. No. 16-8940 (KM)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Jacqueline Cleary Cochran, brings this action pursuant to §§ 205(g) and 1631(c)(3) of Title II of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final determination of the Acting Commissioner of the Social Security Administration ("SSA"). That determination denied disability insurance benefits for a claimed period of disability with an onset date of April 1, 2012.

Ms. Cochran raises several claims of error, the most serious of which involves the ALJ's conclusion that she could perform past relevant work as a Control Board Operator. Because the ALJ found in the alternative that Ms. Cochran could perform other jobs existing in the national economy, any such error, if there was one, was harmless. For the reasons stated herein, I will affirm the determination of the Administrative Law Judge ("ALJ").

1

## I. Background[1]

Ms. Cochran suffers from several disorders, including disorders of the female genital organs, a history of cervical and bladder cancers, disorders of the urinary system, pelvic pain, gastrointestinal disorders, abdominal pain, migraines, carpal tunnel syndrome, and musculoskeletal disorders of the spine. (R. 14.) On May 3, 2013, Ms. Cochran filed a Title II application for a period of disability and for disability insurance benefits. (R. 12.) The period of disability was alleged to have begun on April 1, 2012. (*Id.*) Her claim for benefits was denied on August 1, 2013 and denied again upon reconsideration on October 25, 2013. Ms. Cochran filed a request for a hearing with the ALJ on December 13, 2013. (*Id.*) She and an impartial vocational expert, Marian D. Anderson, appeared and testified at the hearing, which was held on April 30, 2015. (*Id.*) The ALJ issued a decision on July 30, 2015, in which she determined that Ms. Cochran was not under a disability within the meaning of the Social Security Act for the period at issue. (*Id.*) Ms. Cochran then filed a request for review by the Appeals Council, which was denied. (R. 1–4.)

Ms. Cochran argues generally that the ALJ did not have substantial evidence to reach that decision. (Pl. Br. 5.) She specifically argues that the ALJ erred in her finding that she was not disabled by wrongly finding that she was capable of performing past relevant work as a "Control Board Operator." (*Id.* at 5–6.) Moreover, she takes issue with the "second hypothetical" posited by the ALJ to the vocational expert, which included a sedentary residual functional capacity and the ability to alternate between sitting and standing every fifteen minutes. (*Id.*) Ms. Cochran says that the agency cannot "have it both ways"; that is, the ALJ cannot find both that Ms. Cochran functions at a "sedentary and simple job" level, but could return to a "sedentary and semi-skilled" job (*i.e.*, her past relevant work). (*Id.*)

---

[1] The administrative record (ECF no. 6) is cited as "R. \_\_." The Brief filed by Ms. Cochran in support of this review (ECF no. 7) is cited as "Pl. Br." The Brief of the agency (ECF no. 8) is cited as "Def. Br."

The agency responds that Ms. Cochran neither has met the Social Security Act's stringent definition of disability nor has met her burden of proving that she could not return to her past relevant work. (Def. Br. 11–12.) Moreover, it argues that the ALJ appropriately relied on the vocational expert's testimony in finding that Ms. Cochran could return to her past relevant work as a receptionist. (*Id.* at 12.) It argues in the alternative that the ALJ properly identified other jobs that she could perform notwithstanding her functional limitations. (*Id.* at 14.)

## II. Analysis

### a. Standard of Review

For the purposes of a Social Security appeal of a final determination of an ALJ, the Court conducts a plenary review of the legal issues. *See Schauck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must accept the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### b. First Four Steps and Substantial Evidence

The SSA, under the authority of the Social Security Act, 42 U.S.C. § 901, *et seq.*, has laid out a five-step process for evaluating whether a claimant is entitled to receive benefits for a disability. 20 C.F.R. §§ 404.1520, 416.920. Under the first step, the Commissioner determines if the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). Should this not be the case, the Commissioner then proceeds to the second step to determine whether the claimant's alleged

impairment or combination of impairments is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant's impairment or combination of impairments is severe, the Commissioner moves onto the third step, where she must inquire whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments propagated by the SSA. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the analysis ends, as the claimant is automatically eligible to receive benefits. *Id.* §§ 404.1520(d), 416.920(d). If not, the Commissioner goes to the fourth step. There, she decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform "part relevant work." *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. However, at the fifth step, the SSA has the burden of demonstrating that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

As to the first step, the ALJ found that Ms. Cochran did not engage in substantial gainful activity from an alleged onset date of April 1, 2012, to her last insured date of December 31, 2013. (R. 14.) She came to this determination by relying on evidence of the claimant's "New Hire, Quarter Wage, Unemployment Query (NDNH)," "Certified Earnings Records," "Detailed Earnings Query," and "Summary Earnings Query" from the relevant time period. (R. 14, 186–193.)

At the second step, the ALJ determined that the impairment or combination of impairments exhibited by Ms. Cochran were severe. (R. 14.) The ALJ found that Ms. Cochran had disorders of the female genital organs, a history of cervical and bladder (urothelial) cancers, disorders of the urinary system, pelvic pain, gastrointestinal disorders, abdominal pain, migraines, carpal tunnel syndrome, and musculoskeletal disorders of the spine. (R. 14.) The ALJ cited the medical record in coming to the conclusion that the evidence

4

supported her finding that these impairments in unison significantly limit her mental and/or physical abilities to do one or more basic work activities. (*Id.*) The medical record cited contains over twenty medical exhibits, ranging from disability reports to reports of medical treatment to patient visit notes to lists of prescribed medication, all of which support her exhibited impairments as being severe. (*See* R. 194–477.)

At the third step, the ALJ concluded that Ms. Cochran did not have a combination of impairments that met or were medically equivalent to the severity of the impairments listed in the regulations. (R. 15.) The ALJ looked at Ms. Cochran's history of female genital organ disorders (including cervical cancer that was treated with cryotherapy, radiation, and surgery and which caused her to have abdominal pain and pelvic pain) and compared it with §§ 6.0 (genitourinary impairments) and 13.0 (cancer) of the listed impairments. (*Id.*) She concluded that the medical evidence did not meet the severity, duration, or treatment requirements of those sections. (*Id.*) Specifically, she concluded that there was insufficient evidence that the claimant had cancer which has spread, kidney cancer, or a lack of response to the treatment as contemplated by the regulations. (*Id.*) Similarly, she found that Ms. Cochran's intestinal pain did not meet or was not medically equivalent to the listings in § 5.0 (digestive impairments) of Appendix 1, even though she testified to severe and worsening diarrhea and frequent bathroom visits. (*Id.*) The ALJ also noted that the migraine headaches described by Ms. Cochran "arguably approximate[d] the severity contemplated by §§ 2.0 (special sense) and 11.00 (neurological) but that the evidence on the whole did not support the existence of a medically determinable condition at the level of severity contemplated by the listings. (*Id.*) Finally, the ALJ found that the medical record did not provide the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis contemplated under Listing 1.00 and that there was no evidence that her back disorder resulted in an inability to ambulate effectively

or that the carpal tunnel has resulted in major joint dysfunction as defined in that listing. (*Id.*)

Those conclusions were supported by substantial evidence. As to the first set of impairments affecting the female genital organs, the ALJ adequately relied on the medical record to conclude that the impairments did not meet the severity of the listings. She also had substantial evidence for finding that the intestinal pain did not meeting the listings in §§ 5.0. In her decision, she acknowledged Ms. Cochran's issues with diarrhea and frequent bathroom visits, but also noted that the record did not establish any involvement with the upper gastro-intestinal tract, esophagus, stomach, liver, or weight changes, which is specified in the listings and which is in fact reflected in the medical record. (R. 15, 194–477.) There was also substantial evidence for concluding that the migraine headaches were not supported with evidence of a medically determinable condition consistent with the listings. (*See* R. 459–77.) Finally, the ALJ had substantial evidence to conclude that the back disorders did not result in an inability to ambulate effectively or that the carpal tunnel resulted in major joint dysfunction, as the medical records do not state that either has sufficiently impaired Ms. Cochran. (*See id.*)

At the fourth step, the ALJ determined that Ms. Cochran had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(b).[2] In making this finding, the ALJ stated that she "considered all

---

[2] The ALJ's finding of residual functional capacity contained the following exceptions or reservations:

> "The claimant can lift and carry ten pounds occasionally; sit six hours in an eight hour work day; stand and/or walk two hours in an eight hour workday; occasionally climb ramps and stairs and occasionally reach overhead. The claimant can never climb ladders, ropes or scaffold[ing] and never crouch, kneel, or crawl, can occasionally perform handling and fingering. The claimant must be able to alternate between sitting and standing every fifteen minutes while remaining on tasks limited to simple and routine work. In addition, she must avoid unprotected heights, moving mechanical parts, weather, humidity, wetness, dusts, odors, fumes and other pulmonary irritants and noise."

symptoms and the extent to which these symptoms c[ould] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and [Social Security Rulings] 96-4p and 96-7p." (R. 16.) She outlined the two-step process in reaching this result as consisting of, first, determining "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms" and, second, evaluating "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id.*) For the second step, the ALJ said that she was required to make a finding on the credibility of the claimant's statements on the record, in the absence of substantiating evidence in the medical record. (*Id.*)

The ALJ concluded both that the evidence in the medical record failed to support Ms. Cochran's claims of disability and that "[her] statements concerning the intensity, persistence and limiting effects of [her stated] symptoms [were] not entirely credible." (R. 16–17.) In coming to her conclusion, the ALJ relied on specific pieces of evidence in the record. She noted that these documents showed a history of cancer followed by surgeries and treatments, that Ms. Cochran was prescribed OxyContin and oxycodone, that she was "stable" on her current regimen, that her complaints of severe pain were accompanied with a medical determination that she was "stable," that her contemporaneous prescription regiment brought her pain to a "tolerable" level, and that an ultrasound was "unremarkable" and that a cystoscopy was "negative." (R. 17, 260–316, 390–477.)

Ms. Cochran testified, however, that she had chronic pain in her lower back and neck and joint swelling, and that she could only stand for thirty minutes before she had to sit for five to ten minutes. (R. 17, 58.) She also stated that she could only walk for forty-five minutes to an hour before she

---

(R. 15.)

needs to rest on a bed. (R. 17, 58–59.) The ALJ noted that the medical record countered this testimony or, at the very least, put it into doubt. (R. 17.) In those records, Ms. Cochran denied having such pains or limitation in motion. (R. 17, 427, 434.)

As to the carpal tunnel syndrome, the ALJ acknowledged medical evidence (in this case, an electrodiagnostic study) supporting the conclusion that Ms. Cochran had the impairment. The ALJ did not accept, however, that the impairment met the severity-durational requirements, since there was insufficient medical evidence that this condition was severe enough or lasted long enough to satisfy the impairment requirements. (R. 17–18, 380.) As to the migraine headaches, the ALJ cited to documents which noted that the etiology of her symptoms was unknown and that an MRI scan of her brain came up negative. (R. 18, 393, 458.) Both of these conclusions are supported by the medical record cited by the ALJ. In determining the restrictions on what Ms. Cochran could do at work, the ALJ merely added limitations to possible irritants including environmental restriction out of an abundance of caution, and not as an endorsement of the severity or duration of the alleged impairments. (R. 18.)

The ALJ also considered the findings of other individuals who encountered or examined Ms. Cochran's impairments. She considered the finding of the state agency medical consultants that Ms. Cochran was not disabled, properly weighing them as statements from "non-examining expert sources." (R. 18.) She explained that these determinations were "well-supported" and "not inconsistent with the other substantial evidence." (*Id.*) These records align with her conclusion. (R. 97–105, 107–16.)

ALJ also discussed the documents from Ms. Cochran's treating physician, Dr. Mario Vukic, which found her symptoms to be so severe as to interfere with her activities of daily living and her ability to care for her son. (R. 18, 393–458.) Dr. Vukic concluded that she was unable to work in a competitive environment. (*Id.*) The ALJ explained that while the opinion of a

8

treating physician is given controlling weight, this is not the case when it is inconsistent with other substantial evidence. (R. 18.) She pointed to patient notes and medical reports from other doctors who treated, diagnosed, or tested Ms. Cochran, all of which brought Vukic's findings into question. (R. 304–16, 390–458.) She specifically noted that the objective clinical findings in those reports did not support any such finding and therefore accorded his opinion little weight. (R. 18.)

Given the standard of review for a Social Security appeal, *supra* Part II.a, I must defer to the ALJ's credibility determination and weighing of the evidence when it is supported by substantial evidence in the record. Here, the ALJ had substantial evidence in the record to come to the conclusion that Ms. Cochran's residual functional capacity should be limited in the way described above and that Ms. Cochran should not be precluded from all work activity.

### c. Past Relevant Work

The ALJ then determined that Ms. Cochran from the onset of the disability until the date of last insured was capable of performing past relevant work as a Control Board Operator (listed in the Dictionary of Occupational Titles ["DOT"] as #235.662-022), Facial Massage Therapist (DOT #334.374-010), or Facial Operator (DOT #332.271-010). (R. 19.) She noted that this work did not require the performance of activities precluded by Ms. Cochran's residual functional capacity. (*Id.*) In coming to conclusion that Ms. Cochran could work as a Control Board Operator, the ALJ relied on the testimony of the vocational expert and the comparison of Ms. Cochran's residual functional capacity with the physical and mental demands of that type of work. (*Id.*) She also made the alternative finding that there existed other jobs in significant numbers in the national economy at the time, which could have been performed by Ms. Cochran. (*Id.*)

The ALJ properly explained that she was obligated to consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational rules (20 C.F.R. Part 404, Subpart P.,

Appendix 2). (*Id.*) She further stated that under the framework of the Medical-Vocational Guidelines it was appropriate to make a finding of "not disabled." (R. 19–20.) She also relied on the testimony of the vocational expert in coming to this conclusion. (*Id.*)

Ms. Cochran's main contention with this conclusion is that the agency is trying to "have it both ways." (Pl. Br. 6.) In other words, she argues, the agency cannot both find that Ms. Cochran functions at a "Sedentary and Simple job" level, but also find that she "can then return to her Sedentary and Semi-Skilled [Past Related Work]." (*Id.*) She argues that this conclusion therefore fails the fourth step of the five step analysis. (*Id.*)

The ALJ in coming to this conclusion relied greatly on a series of hypothetical questions put to the impartial vocational expert who testified at the hearing. An ALJ is explicitly allowed to pose hypothetical questions to a vocational expert regarding claimant's medical impairments and their ability to meet the demands of their previous work as actually performed or as generally performed in the national economy. Vocational experts (who, of course, are not fact witnesses) are explicitly allowed to offer opinion testimony by responding to such hypothetical questions. 20 C.F.R. § 404.1560; *Winward v. Comm'r*, 629 Fed. App'x 393, 396 (3d Cir. 2015) (noting that though the ALH must accurately convey to the vocational expert all of the claimant's limitations, she need not to submit to the expert every impairment *alleged* by the claimant). Here, the ALJ posed a hypothetical question that conveyed the impairments exhibited by Ms. Cochran, and the expert responded that such a hypothetical individual would not have been able to perform the work of a Facial Massage Therapist or a Facial Operator, but could in fact have done the work of a Control Board Operator.[3] (R. 83.) The vocational expert, in response to that

---

3   The  initial hypothetical question as asked at the hearing was:

   "[ALJ]: I'd like you to consider a hypothetical individual of the claimant's—with the claimaint's work history; experience; and education; and age. And let's see here. Okay. If the individual was occasionally able to lift 10 pounds; sit for six

10

hypothetical and to another with a modification where the same person had even more limitations, added that such an individual could have also performed work as a Document Preparer (DOT # 249.587-018) or a Surveillance System Monitor (DOT #379.367-010) (R. 83, 85–86.) Later on at the hearing, the vocational expert returned to answer another hypothetical question from the ALJ, which added added the further limitation that the individual in question could perform only "simple and routine tasks." (R. 89.) The vocational expert responded that "even though the past work of control board operator/receptionist was semi-skilled," such a hypothetical individual could perform such work. (R. 90.)

As a general rule, occupational evidence provided by a vocational expert should be consistent with the occupational evidence presented in the DOT. *Zimsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citing SSR 00-4p, 2000 WL 1898403, at *3 (Dec. 4, 2000). The ALJ has an obligation to ask, on the record, whether the vocational expert's testimony is consistent with the DOT, to elicit a reasonable explanation should an inconsistency appear, and to explain in its decision how the conflict was resolved. *Id.* (citing *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002) and noting that such a failure may warrant remand in a particular case but the mere presence of inconsistences does not require a remand). Those requirements were met here. As part of her preliminary questions before continuing onto the substance of the testimony, the ALJ explicitly asked the vocational expert if she understood that she must note any inconsistencies with the DOT. (R. 81.) The ALJ then asked, regarding one of the

---

hours; stand or walk for two hours; avoid climbing ramps and stairs—or strike that—occasionally climbing ramps and stairs; and never climbing ladders, ropes, or scaffolds; never kneeling, crouching, or crawling; occasionally reaching over head; occasionally—excuse me—frequently handling and fingering . . . [a]voiding unprotected heights; moving mechanical parts; avoiding weather; wetness; dust; odors; fumes; and pulmonary irritants; and noise. Would such an individual be able to perform claimant's past work?"

(R. 82–83.)

11

hypotheticals, whether this was consistent with the DOT, to which the vocational expert replied that it was. (R. 90.) Nowhere in that section of the transcript does the ALJ, the vocational expert, or Ms. Cochran's attorney raise the issue that the answer to the hypothetical was inconsistent with what was described in the DOT.

I find that the ALJ reasonably relied on the vocational expert's opinion that a hypothetical individual with Ms. Cochran's medical impairments could have performed her past relevant work as a Control Board Operator. True, some level of discrepancy might be found.[4] Still, the Third Circuit, noting the decisions of several other courts, has concluded that there is not a *per se* conflict between being able to perform a "reasoning level 3 job" (the same level of a Control Board Operator) and a finding of a limitation to routine tasks and unskilled work. *Zirnsak*, 777 F.3d at 618. Thus, just because there is a dissonance between the characterization of past relevant work and the limitations imposed by an ALJ does not mean there is automatically an inconsistency that would require an ALJ to press the vocational expert further. Ms. Cochran's only support for her argument that the opinion is inconsistent is that the term "remaining on task" is unambiguous and "implies the hypothetical individual is free of any cognitive and/or emotional limitation." (Pl. Br. 6.) However, Ms. Cochran provides no legal authority for this position and it is not clear that this term triggers an immediate conflict that necessitates the ALJ's further exploration to resolve the discrepancy.

At any rate, the claimed error is harmless. In the alternative, the ALJ found that other jobs existed in the national economy that Ms. Cochran could have performed, in this case Document Preparer and Surveillance System Monitor, based on the testimony of the vocational expert that 3,000,000 and 100,000 of those jobs existed, respectively. (R. 19–20, 85–86.) This provides an

---

[4] The agency in its briefing seems to acknowledge a "discrepancy" between the vocational expert's opinion and the listing in the DOT, but downplays its significance. (R. 91.)

alternative basis for the ALJ's finding that Ms. Cochran was not disabled under the framework during the relevant time period, as she could have obtained work in these two fields without having to become a Control Board Operator. *See Jiminez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *8–*9 (D.N.J. May 11, 2016) (stating that the ALJ is allowed to make findings in the alternative that independently rule out a finding of disability).

### III. Conclusion

For the reasons stated above, Ms. Cochran has failed to demonstrate that the ALJ's decision that she was not disabled was not supported by substantial evidence. Under the applicable standard of review, that is sufficient to require that I affirm the denial of benefits and the denial of a period of disability. The ALJ's decision is therefore AFFIRMED.

An appropriate Order is filed herewith.

Dated: November 20, 2017

**Kevin McNulty**
**United States District Judge**